UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ELLA HARMON AND CHANTEL SMITH | : | CIVIL ACTION NO. 07-CV-1990 |
| VERSUS | : | JUDGE MINALDI |
| STATE FARM FIRE & CASUALTY COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF KERMITH SONNIER AND COST CONTROL SERVICES, LLC

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted by defendant, **STATE FARM FIRE & CASUALTY COMPANY**, in support of its Motion to Exclude the Testimony and Report of Kermith Sonnier and Cost Control Services, LLC.

### BACKGROUND

Plaintiffs, Ella Harmon and Chantel Smith, filed the instant action for property damage to their home following Hurricane Rita. In support of their claim, Plaintiffs retained the services of Kermith Sonnier and Cost Control Services, LLC to provide a damage repair estimate. Sonnier has now authored two repair estimates. Both estimates are dated 10-07-07. The first estimate lists dwelling damage total as $55,564.64 and the second lists dwelling damage total as $120,401.20. *Attached hereto as* **Exhibits A** and **B**, respectively.

For the past year, State Farm has attempted to schedule the deposition of a Cost Control representative in this file. The depositions have actually been scheduled three separate times. The deposition of Kermith Sonnier, and the estimator listed in the first Cost Control report, Tommy

Greenlee, were originally scheduled to take place on July 30, 2008. Plaintiff's counsel at that time, Clayton Davis, unilaterally cancelled those depositions by letter dated July 7, 2008, attached hereto as **Exhibit C**.

Plaintiffs thereafter indicated that they were not going to call Tommy Greenlee, the estimator for the Cost Control report, but instead were only going to call Kermith Sonnier in the trial of this matter. For this reason, only the deposition of Kermith Sonnier was rescheduled for January 14, 2009. Prior to Sonnier's deposition, undersigned counsel was informed that Sonnier had not personally inspected the home at issue in this case. Because a deposition would be useless until Sonnier actually inspected the home, undersigned counsel passed the deposition and asked that Sonnier go look at the home so that he could intelligently discuss the issues in this case at his deposition.

The deposition of Sonnier was then rescheduled for February 6, 2009. Again, just prior to February 6, 2009, undersigned counsel was informed that Kermith Sonnier still had not inspected the home at issue in this litigation. Kermith Sonnier's deposition was passed yet again. The deposition of Kermith Sonnier is now presently set for February 27, 2009. The trial of this matter is scheduled for March 23, 2009. Sonnier, for the first time ever, inspected the Harmon home on February 19, 2009. In spite of this, Kermith Sonnier has authored the two attached damage estimates, attached hereto as **Exhibit A** and **B**, and apparently intends to testify before the jury in this matter concerning his assessment of damage and the cost to repair that damage. As of the time of this filing, Sonnier has not amended or supplemented his repair estimates in any way after having actually seen the house and purported damage.

The above facts beg the question of how can Sonnier be the principle author of two damage appraisals, and testify before a jury in this matter concerning his supposed inspection and appraisal,

when, at the time he drafted those estimates, no personal inspection had taken place. The inspection by Sonnier at this late date is no more than an attempt to justify Sonnier's previous estimates with an after the fact inspection. This type of methodology is not proper under Federal Rule of Evidence 702 and the standards of *Daubert*. Furthermore, plaintiffs are preventing defendants from deposing Sonnier and from preparing our case for trial by not having Sonnier inspect the property sooner than they have. By plaintiff's own actions, they have insulated Sonnier from deposition in this matter by either requesting or acquiescing in Sonnier delaying his actual inspection of the home.

Plaintiffs have decided to rely solely upon the testimony of Kermith Sonnier concerning the cost to repair their home. Kermith Sonnier's actions in this case are in the least based on an invalid methodology, and more likely based on no methodology at all. No accepted method of estimating would allow a person to author two detailed estimates without ever looking at the house once. For the above reasons, the two Cost Control reports, and Sonnier himself, should be excluded from the trial of this matter.

## LAW AND ARGUMENT

The genesis of the current law on admissibility of expert testimony is found in the 1993 U.S. Supreme Court case of *Daubert v. Merrill-Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 469. Following *Daubert*, the Supreme Court once again considered the issue of admissibility of expert testimony, clarifying the scope and breadth of the *Daubert* standard in *Kuhmo Tire Co v Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 238 (1999). Soon after *Kuhmo* was rendered, the Federal Rule of Evidence 702 was amended to reflect that standard. Sonnier's report and anticipated testimony fail the standard of *Daubert/Kuhmo* and Rule 702 because his methodology is invalid and unreliable.

Rule 702 of the Federal Rules of Evidence allows expert testimony only if it "will assist the

trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591-92. Because the "helpfulness" standard requires a "valid scientific connection" to the issues in dispute, the expert's opinions must be reliable as well as relevant. *Id.* To determine whether the expert's scientific knowledge will help the trier of fact, the trial court must perform a "gatekeeping" role and preliminarily assess "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

In performing its "gatekeeping" role as to reliability, the Court should consider the following factors:

1) whether the theory can or has been tested;

2) whether the theory has been subjected to peer review and publication;

3) the theory's known or potential rate of error; and

4) the theory's level of acceptance in the relevant scientific community.

*Daubert*, 509 U.S. at 594.

Further, Rule 702 of the Federal Rules of Evidence provides that an expert may testify *only* if:

1) the testimony is based upon sufficient facts or data;

2) the testimony is the product of reliable principles and methods; and

3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"The trial court's focus on admissibility should be on the scientific validity of the principles and methodology that underlie the expert's opinion, not on the expert's conclusions." *Daubert*, 509 U.S. at 594, 595. The *Daubert* analysis applies equally in the scientific and non-scientific contexts -

*Daubert* applies to all experts. *Kumho Tire*, 526 U.S. at 152. The bottom line inquiry, after *Daubert*, *Kumho Tire* and the amendment of Rule 702, is that expert testimony is only admissible **IF:** 1) the testimony is based upon sufficient facts or data; 2) the testimony is the product of reliable principles and methods; and 3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

Sonnier has provided a very detailed, line-by-line repair estimate for a house he had never laid eyes on at the time he prepared the estimate. In fact, he has provided two such estimates. Sonnier's conclusions that something needs repair, how much repair it needs, and how much it will cost are <u>entirely speculative</u>. In fact, having not been to the house before estimating the cost of repair, how could Sonnier even know if the listed items on his estimates need repair? While it is acknowledged that Tommy Greenlee allegedly inspected the Harmon home prior to the first property damage estimate, there is no question that no one with Cost Control viewed the home prior to creation of the second estimate, attached hereto as **Exhibit B**. It is remarkable that without a reinspection by Tommy Greenlee, and any inspection by Kermith Sonnier, that Kermith Sonnier redrafted his estimate to increase the dwelling damage total from $55,564.64 to $120,401.20. The facts underlying this argument are so egregious, that undersigned counsel has been able to find any direct case law stating the obvious. A person who is going to be tendered as a property damage expert and estimator, needs to have seen the property before he can assess the damage or estimate the cost of repair. This should be an even stronger requirement when, as in the present case, the home is still available and is in the same basic condition that it was in right after Hurricane Rita. It is significant that Ms. Harmon has testified in deposition that she has attempted no repairs to her home at all since the storm.

"In serving as gatekeepers to keep out evidence that constitutes nothing more than 'junk

science' or mere speculation, trial courts should constantly be asking whether the proffered witness has sufficient information, based upon evidence, to render a reliable opinion" *Harris v. Cropmate Co.*, 706 N.E.2d 55 (4th Dist. 1999). By this standard, Sonnier's methodology is nothing more than "mere speculation" not based upon sufficient information or evidence for him to render a reliable opinion. "The existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007).

Sonnier's methodology is patently unreliable. He purports to be able to determine whether a certain floor, fixture, or rafter is damaged in a home - all before he ever laid eyes on the home. He purports to be able to determine the cost of repairing what he believes to be damaged - without seeing for himself the extent to which it is damaged, if at all. Without inspecting the home before authoring his estimate, Sonnier lacks the requisite "sufficient information...to render a reliable opinion." *Harris*, 706 N.E. 55. Sonnier's estimate is nothing more than a compilation of bare conclusions based on "mere speculation."

Again, under *Daubert*, in performing its "gatekeeping" role as to reliability, the Court should consider the following factors:

1)   whether the theory can or has been tested;

2)   whether the theory has been subjected to peer review and publication;

3)   the theory's known or potential rate of error; and

4)   the theory's level of acceptance in the relevant scientific community.

*Daubert*, 509 U.S. at 594.

Sonnier's "theory" is that he can detect damage and determine the cost to repair that damage without ever looking at what he claims is damaged. There is absolutely no way to "test" such a method. The potential rate of error in predicting damage with pure speculation is endless. Not

seeing what is damaged and not damaged means not knowing what is damaged and not damaged.

State Farm could only imagine the outrage and motions it would face by plaintiffs if it attempted to do what plaintiffs are doing in this matter. Consider the motions State Farm would face if it attempted to have someone other than the person who actually inspected plaintiff's home testify concerning plaintiff's damages related to Hurricane Rita. Not only are plaintiffs in this matter attempting to do just this, but, without anyone performing a reinspection, the author of the estimate (who had performed no personal inspection at the time he authored his two estimates) increases the estimate from $55,564.64 to $120,401.20. Had State Farm attempted something like this it would without question have its proposed witnesses, someone we just found who happens to know about estimating damages, excluded because that person would have never actually seen the home. Plaintiff's witnesses should be subject to the same scrutiny.

Sonnier's entire report and anticipated testimony should be excluded from the trial of this matter. Sonnier's methodology fails the standards of *Daubert/Kumho Tire* and Rule 702.

Respectfully submitted,

**PLAUCHÉ, SMITH & NIESET**
(A Professional Law Corporation)


By:      /s/ V. Ed McGuire, III
**V. ED MCGUIRE, III** (#23861)
**ERIC W. ROAN** (#22568)
**MATTHEW P. KEATING** (#30911)
1123 Pithon Street
P.O. Drawer 1705
Lake Charles, LA 70602-1705
Phone: (337) 436-0522
Fax:    (337) 436-9637

**ATTORNEYS FOR DEFENDANT,
STATE FARM FIRE & CASUALTY
COMPANY**

## ***CERTIFICATE OF SERVICE***

I HEREBY CERTIFY that the foregoing was hand delivered this day to all counsel and pro se parties of record via the Court's CM/ECF electronic filing system.

Lake Charles, Louisiana, this **23rd** day of **FEBRUARY, 2009**.

/s/ V. Ed McGuire, III
**V. ED MCGUIRE, III**
**Bar Roll No. 23861**